# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY DIVISION

| | |
|---|---|
| **HENRY SHELL,** | ) |
| Petitioner, | ) |
| | ) **CIVIL ACTION NO. 5:21-00366** |
| v. | ) |
| **WARDEN,** | ) |
| Respondent. | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

On June 25, 2021, Petitioner, acting *pro se*, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody. (Document No. 2).[1] In his Petition, Petitioner first argues there was insufficient evidence to convict him of a disciplinary violation for refusing to provide a urine sample in violation of Prohibited Act Code 110. (Id.) Petitioner explains that he was taking Oxcarbazepine, which is a medication that disrupts his ability to urinate. (Id.) Petitioner contends that he did not refuse to urinate, but was merely unable to urine due to the side effects of the above medication. (Id.) Petitioner argues that "medically, am innocent of refusing to provide a urine sample" and "there cannot be some evidence that I refused." (Id.) Second, Petitioner argues that his due process rights concerning disciplinary proceedings were violated concerning his "FBOP appeal." (Id.) Petitioner states that "DHO appeals are filed directly to the local region as the Wardens have no authority over DHO appeals." (Id.) Petitioner claims that he filed a BP-10 Regional Appeal, but "negligent regional staff rejected his appeal and told [him] to file a local BP-9 to the Warden first." (Id.) Petitioner contends that he did so, but his BP-

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

9 was rejected." (Id.) Petitioner argues that when the refiled his second BP-10, his appeal was rejected as untimely." (Id.) As relief, Petitioner requests that his disciplinary charge and sanctions be expunged and his 41 days of good time credit be restored. (Id.)

By Order entered on August 11, 2021, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of Habeas Corpus sought by the Petitioner in this case should not be granted. (Document No. 9.) On August 31, 2021, Respondent filed his Response to the Order to Show Cause. (Document No. 12.) Respondent argues that Petitioner's Petition should be denied based upon the following: (1) "Petitioner received the rights afforded pursuant to Wolff" (Id., pp. 6 – 7.); and (2) "Sufficient evidence existed to support the DHO's action" (Id., pp. 8 – 9.).

As Exhibits, Respondent attaches the following: (1) The Declaration of Destiney Spearen (Document No. 12-1, p. 2.); (2) A copy of Petitioner's "Public Information Inmate Data As Of 08-26-2021" (Id., pp. 4 - 11.); (3) A copy of Incident Report No. 3430998 (Id., pp. 13 – 14.); (4) A copy of the "Inmate Rights a Discipline Hearing Form" dated September 29, 2020 (Id., p. 16.); (5) A copy of the "Notice of Discipline Hearing Before the DHO" form dated September 29, 2020 (Id., p. 18.); and (6) A copy of the Discipline Hearing Officer Report dated October 21, 2020 (Id., pp. 20 – 24.).

By Order and Notice entered on September 1, 2021, the undersigned advised Petitioner of his right to file a Reply to Respondent's Response. (Document No. 13, pp. 1- 2.) Following the granting of an extension of time, Petitioner filed his Reply on November 4, 2021. (Document No. 16.) Petitioner continues to argue that "he is currently and has been taking prescribed medication that makes it difficult, if not, impossible to produce urine samples on the spot." (Id.) Petitioner

2

states he has attached exhibits "reflecting all the medications he has been prescribed and was taking at the time he was ordered to produce a urine sample and he couldn't." (Id.) Petitioner contends that he has submitted "undisputable evidence of the specific prescription and proof of the side effects involved." (Id.) Petitioner, therefore, states that he "reiterates the arguments in his initiating documents and seeks to have the charge and findings of guilty expunged from his institutional record as the evidence attached requires." (Id.)

As Exhibits, Petitioner attaches the following: (1) A handwritten description of the side effect of taking "oxcarbazepine" (Id., p. 3.); (2) The contact information for Laurel County Probation & Parole and Dismas Charities Manchester, who are contacts Petitioner claims can confirm he had difficulty providing a urine sample (Id., p. 4.); (3) A medication information sheet for Omeprazole (Id., pp. 5 – 8.); (4) A medication information sheet for Oxcarbazepine (Id., pp. 9 – 11.); (5) A medication information sheet for Ibuprofen (Id., pp. 12 – 14.); (5) A medication information sheet for Metoprolo (Id., pp. 15 – 16.); (6) A medication information sheet for Fluoxetine (Id., pp. 17 – 19.); (7) A medication information sheet for Hydrochlorothiazide (Id., pp. 20 – 22.); (8) A medication information sheet for Amitriptyline (Id., pp. 23 – 27.)

**DISCUSSION**

1.   **Due Process Violation Pursuant to Wolff:**

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without

3

due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in good-time

4

credits without procedural due process).

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

In the instant case, Petitioner does not dispute that he received all documents pertinent to the charges against him, was advised of his rights, and had ample opportunity to present a defense

to those charges. The record reveals that Petitioner received written notice of the charges at least 24 hours before the DHO hearing. Specifically, Petitioner received a copy of the Incident Report on September 7, 2020, and the DHO hearing was conducted on October 2, 2020. (Document No. 12-1, pp. 13 – 14 and 20.) Following the UDC Hearing conducted on September 29, 2020, Petitioner was provided an Inmate Rights at Discipline Hearing form and a Notice of Discipline Hearing Before the DHO form. (Id., pp. 16 and 18.) Petitioner does not contend that he was denied to opportunity to present evidence or witnesses in his defense. During the DHO hearing, Petitioner confirmed that he did not want a staff representative nor did he wish to call witnesses. (Id., p. 20.) The record reveals that the DHO's decision was entered on October 21, 2020, and Petitioner received a copy of the DHO Report on October 22, 2020. (Id., pp. 20 - 24.) The DHO Report clearly indicated the evidence relied upon and the reasons for the disciplinary action. (Id.) To the extent Petitioner complains he was denied his right to due process because the Regional Office failed to properly consider his appeal of the DHO's decision, Petitioner's claim is without merit. The undersigned find that "appellate review is not an element of due process." Massey v. Ballard, 2009 WL 2916889 (S.D.W.Va. Sept. 8, 2009)(citing Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983)); also see Moses v. Bledsoe, 2004 WL 3317657, at * 4 (N.D.W.Va. Sept. 28, 2004)(stating "there is no due process right to an appeal process"). Accordingly, the undersigned finds that the Wolff requirements were satisfied.

**2.     Insufficient Evidence:**

Next, Petitioner contends that there was insufficient evidence to support the DHO's decision. Specifically, Petitioner contends that his conviction for failure to provide a urine sample should be expunged because there was no evidence that Petitioner refused to produce a urine

sample. Petitioner contends that the evidence merely proves that Petitioner was physically unable to produce a urine sample due to the side effects of his medication.

The Supreme Court explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. Thus, "*Wolff* stands for the proposition that a prisoner is not guaranteed unfettered access to exculpatory evidence in the context of a disciplinary hearing." Johnson v. Warden, FCI Williamburg, 2014 WL 4825926, * 2 (D.S.C. Sept. 24, 2014), aff'd 597 Fed.Appx. 161 (4th Cir. 2015), cert. denied, ___ U.S. ___, 136 S.Ct. 556, 193 L.Ed.2d 430 (2015). In disciplinary hearings, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). This standard is "extremely broad in scope and presents a very low burden for prison officials to meet." Tyler v. Hooks, 945 F.3d 159, 171 (4th Cir. 2019), cert. denied, ___ U.S. ___, 140 S.Ct. 2785, 206 L.Ed.2d. 950 (2020). The requirement that the disciplinary authority's findings be supported by "some evidence" "does not in any way imply that prison disciplinary bodies must consider all possible evidence." Landry v. Adams, 2007 WL 869224, * 4 (E.D.Va. March 19, 2007)(finding petitioner's due process rights were not violated by the unavailability of surveillance video evidence). The Fourth Circuit has explained that in distinguishing "some evidence" from "no evidence," "some evidence" must "possess at least some minimal probative value if it is to be found adequate to satisfy the requirement of the Due Process Clause." Tyler, 945 F.3d at 171(granting *habeas* relief "due to a total absence of evidence in the record, even under the 'some evidence' standard."). When reviewing a prison disciplinary hearing, however, "it is not the job of the courts to assess the weight of the evidence" but "only to determine

whether the guilty finding has support of some fact or any evidence at all." Masengale v. Streeval, 2020 WL 4227559, *4 (W.D.Va. July 23, 2020). As the Supreme Court noted in Hill:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-56, 105 S.Ct. at 2773-74.

The undersigned first finds that prison staff and the DHO acted fully within their discretion in developing the evidence which resulted in the finding that Petitioner was guilty of violating Prohibited Act Code 110. Additionally, the undersigned finds that this finding was supported by "some evidence" and the imposed sanctions were lawful and appropriate. The DHO summarized Petitioner's statement as follows:

> The DHO first confirmed that Inmate SHELL had received a copy of the incident report, did not need a staff representative, did not wish to call a witness, and had no documentary evidence to present. DHO confirmed that he understood his rights at the DHO Hearing. SHELL's due process rights were read and reviewed with him by the DHO at that time of the hearing. SHELL stated that he understood his rights. SHELL acknowledged the UDC discussed with him his rights at the discipline hearing. SHELL raised no issues about the discipline process to this point. There was no video footage that needed to be reviewed for this DHO Hearing.
>
> Inmate SHELL appeared before the DHO and denied the charge. He stated "I have always had trouble urinating. I am on Tryptizol and it dehydrates me."

(Document No. 12-1, p. 20.) In addition to the Incident Report, the DHO considered the Chain of Custody Form (BOP000526331), the Memorandum from A. Shiflet, PharmD, and the Memorandum of R. Smith. (Document No. 12-1, p. 21.) In finding that Petitioner violated Prohibited Act Code 110, the DHO specifically stated that it relied upon the following:

> The DHO finds that inmate SHELL committed the prohibited act of Refusing to Provide a Urine Sample. To make this finding the DHO relied on the following statement provided by the reporting officer which was contained in the Incident

> Report:
>
> Description of Incident (Date: 09/06/2020 Time: 6:50 P.M. Staff became aware of Incident:
> On Sunday, September 6, 2020, at approximately 4:50 p.m., I Correctional Officer C. White was working my assigned post as Pine A Lower #2. While working my assigned post I informed Inmate Shell, Henry Reg. No. (11225-032) that he needed to provide a urine sample. At this time, I filled out chain of custody form BOP0005263331 and provided the inmate with one 8 ounce cup of water and informed him that he had 2 hours to provide a sample. Multiple attempts were made to collect the sample during the two hours. At 6:50 p.m., I made one last attempt to collect the sample but the inmate was unable to provide a sample.
>
> DHO also relied on the memorandum of A. Shiflet, PharmD. He states that upon review of the inmate's medical records that he is not currently prescribed any medication, nor does he have any known medical condition that would cause him to be unable to produce a urine sample in the two hour period as dictated by policy.
>
> Inmate SHELL stated "I take medication that cause me not to be able to use the restroom" to the Investigating Officer. Inmate SHELL stated "I tried to pee but I could not" at the UDC Hearing. Inmate SHELL appeared before the DHO and denied the charge. He stated he did not refuse to provide the urine sample. He also stated that he was unable to produce a sample due to his current medication.
>
> The DHO considered SHELL's statement and explained to him that policy states staff will provide one eight ounce cup of water to aid in collecting the sample and the inmate will be given two hours to provide. It was also relayed to SHELL that an inmate is presumed to be unwilling if the inmate fails to provide a urine sample within the allotted time period. Whether SHELL actually tried to provide the requested urine sample or not, the fact is he did not provide it. No evidence was presented which would indicate SHELL had any type of medical or psychological condition which would hamper his ability to provide that sample.
>
> Accordingly, based on the written report and evidence presented the DHO finds SHELL committed the prohibited acts of Code 110-Refusing to Provide a Urine Sample.

(Id., p. 21.) Thus, it is clear that "some evidence" supports the DHO's decision. As explained by the DHO, BOP policy provides that failure to provide a urine sample in the allotted time period creates a rebuttable presumption that such failure was intentional. See BOP Program Statement 6060.08. Petitioner does not dispute that he was unable to produce a urine sample within the

allotted time. Petitioner, however, argues that he was physically unable to produce a urine sample due the side effects of a medication he was taking. The DHO, however, was presented with a memorandum from A. Shiflet, PharmD, stating that a review of Petitioner's medical records did not reveal any prescribed medication or medical condition that would cause Petitioner to be unable to produce a urine sample in the two hour period as dictated by policy. Besides Petitioner's conclusory statement, Petitioner failed to produce any evidence to the contrary. As explained above, the relevant inquiry is whether "some evidence" supports the DHO's decision and it is not the province of this Court to weigh the evidence or assess the correctness of the decision. See Masengale, 2020 WL 4227559 * at 4. The undersigned finds there was clearly "some evidence" to support the DHO's finding that Plaintiff violated Prohibited Act Code 110. See Lacy v. Young, 2021 WL 6498833 (S.D.W.Va. Nov. 16, 2021), report and recommendation adopted by, 2022 WL 141675 (S.D.W.Va. January 14, 2022)("Without doubting the sincerity of Lacy's claim that he was physically unable to provide a urine sample on request, the Court lacks authority to grant Lacy relief when the disciplinary proceedings comported with due process and the DHO's decision is supported by some evidence."); Kham v. Langford, 2018 WL 1270974, * 5 (C.D.Cal. Jan. 29, 2018), report and recommendation adopted by, 2018 WL 1271204 (C.D.Cal. March 8, 2018)(upholding sanction for failure to provide a urine sample where petitioner was unable to rebut prison medical staff's email concerning his lack of health conditions); Garza v. English, 2018 WL 6570493, at * 7 (D.Ka. Dec. 13, 2018)(upholding sanction for failure to provide urine sample even where petitioner provided a statement that he was willing but unable to provide a sample due to his medications); Greene v. Warden FCI Edgefield, 2017 WL 1458997, * 5 (D.S.C. March 13, 2017), report and recommendation adopted by, 2017 WL 1436495 (D.S.C. April 24, 2017)(finding

"some evidence" to support the DHO's finding where petitioner admitted he failed to provide a urine sample within the allotted time, but complained he was unable to produce a urine sample due to dehydration); Danielczyk v. Federal Bureau of Prisons, 2015 WL 3885872, * 4 (E.D.Va. June 23, 2015)(Despite petitioner's statement that he had a prostate problem and "just couldn't go on demand," there was "some evidence" to support the DHO's finding where there were emails provided by the Health Services Administrator and a registered nurse stating that petitioner had not been on any medication for the past two months that would have impacted his ability to provide a urine sample nor had he ever previously complained of urine retention.). Based upon the foregoing, the undersigned finds sufficient evidence to support the DHO's decision.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody (Document No. 2) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is

made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: August 24, 2022.

Omar J. Aboulhosn
United States Magistrate Judge